IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| JAMES R. SKRZYPEK, | ) |
| Plaintiff | ) ) ) |
| v. | ) Civil Action No. 06-1129 (EGS) ) ) |
| UNITED STATES TREASURY DEPARTMENT, et al., | ) ) ) |
| Defendants. | ) ) |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney and have been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief, I supervise approximately 206 employees who staff a total of ten (10) units and a field operational service center unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI

records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment of the FOIA and Privacy Act requests of plaintiff James R. Skrzypek which seek access to records pertaining to himself.

(4)     The purpose of this declaration is to provide the Court and plaintiff with a status report, to include the procedural history of plaintiff's FOIA/Privacy Act requests, an explanation of the FBI's Central Records System ("CRS") and Electronic Surveillance Indices ("ELSUR"), and discussion of the search for records conducted at FBIHQ, the Chicago Field Office ("CGFO"), and the Los Angeles Field Office ("LAFO") as well as the partial release of responsive CGFO documents.

## CHRONOLOGY OF PLAINTIFF'S FOIA/PRIVACY ACT REQUEST TO FBI HEADQUARTERS

(5)     By letter dated April 21, 2006, plaintiff submitted a FOIA/Privacy Act request to FBIHQ for "documents, relating in any way, to entries made, court ordered or other, to premises owned by requestor, located at 7628 through 7630 West Foster Avenue, Chicago Illinois 60656 on February 24, 1994". Plaintiff requested FBIHQ to "search the "I-Drive", "S-Drive" or any

-2-

other electronic storage or retention system for these documents at FBI Headquarters or FBI Field Offices germaine to my request". Plaintiff also stated "This request specifically includes all "main" files and "see references" including but not limited to numbered and lettered sub-files, 1A envelopes, enclosures behind files (EBF's), bulky exhibits, control files, and "JUNE" files and reports along with FD 302, FD 209 or other FD inserts, work files, in "workbox" areas, ZyIndex files, Field Office Information Support (FOIMS) Computer Systems Files, sub files such as ELA, ELA1B, ACS Computer Files, FCI/TT Files, ELSUR Files, and any other files or systems whatever their vernacular or nomenclature". (See Exhibit A.)

(6)     By letter dated May 1, 2006, plaintiff wrote again to FBIHQ. In this letter plaintiff requested "documents relating in any way, to any electronic surveillance, telephonic, video, audio or other, concerning James R. Skrzypek and/or Federal Security, Inc., from 1992 to present." Plaintiff also requested "documents relating in any way, to Anthony Pellicano[1] and his involvement, in any way, with James R. Skrzypek and/or Federal Security, including, but not limited to audiotape analysis, enhancement, reproduction or corrections". (See Exhibit B.)

(7)     By letter dated May 12, 2006, FBIHQ returned the request stating that plaintiff's letter did not contain sufficient information to conduct an accurate search of the central records

---

[1] The reference to third party Anthony Pellicano has been construed to mean any information at FBIHQ pertaining to the Plaintiff that may have been cross-referenced in a third party file. A search has been conducted for any and all main files or cross-references at FBIHQ which pertained to plaintiff. The request was not viewed as a specific request for files on an Anthony Pellicano because Plaintiff did not provide either notarized authorization (Privacy Waiver) from Mr. Pellicano or proof of death. (See 28 C.F.R. § 16.3(a)). Third party individuals maintain strong privacy interests in not having their personal information disclosed pursuant to 5 U.S.C. § 552(b)(7)(C). Thus, absent a privacy waiver or proof of death, the FBI will neither confirm nor deny the existence of any files pertaining to a Mr. Anthony Pellicano.

-3-

system and provided a form requesting certain information required to conduct the search. The form was completed by plaintiff, signed and dated May 18, 2006, and returned to FBIHQ. Along with the completed form, plaintiff attached a letter to David M. Hardy dated May 18, 2006. In this letter plaintiff summarized the records requested as the following:

1. Search warrant applications and affidavits to search a house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24, and 25, 1997.

2. Search warrants for a search of a house located at 7620 W. Foster Avenue, Chicago Illinois on July 23, 24 and 25, 1997.

3. Reports, daily or other, surrounding entries to a house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24, and 25, 1997.

4. Inventory of property removed from a residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.

5. Identities of all agents and government officials or employees Entering a residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.

6. Copies of photographs and/or videos made of the house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.

7. Reports of the installation or removal of electronic surveillance equipment in the house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.

8. Copies of FD 597 Receipts for tape recorders, describing make, model and serial numbers corresponding to a December 22, 1994 summary of tape recordings, prepared by SA John Robert Shoup and submitted by memorandum on January 3, 1995.

9. Entries made, court ordered or other, to premises owned by the requestor, located at 7628 through 7630 W. Foster Avenue, Chicago, Illinois 60656 on February 24, 1994, or any other date.

10. Photographs and documentation of a garage located at 7620 W.

Foster Avenue, Chicago, Illinois on July 10, 1997, including but not limited to activity sheets, time sheets and FD 2 Daily Reports for Agent John Diwik. **(See Exhibit C.)**

(8)    By letter dated May 19, 2006, FBIHQ acknowledged receipt of plaintiff's FOIA/Privacy Act request and assigned it FOIPA Request Number 1049543. **(See Exhibit D.)**

(9)    By letter dated October 4, 2006, FBIHQ advised that a search of the automated and manual indices to the Central Records System at FBIHQ located no investigative file responsive to his FOIA/Privacy Act request. The FBI advised plaintiff of his right to file an administrative appeal to the Department of Justice ("DOJ"), Office of Information and Privacy ("OIP")[2]. FBIHQ also enclosed a copy of the FBI File Fact Sheet. **(See Exhibit E.)**

### CHRONOLOGY OF PLAINTIFF'S FOIA/PRIVACY ACT REQUEST TO THE CHICAGO FIELD OFFICE

(10)    By letter dated April 21, 2006, plaintiff submitted a FOIA request to CGFO for any records maintained at CGFO pertaining to:

> 1. Search warrant applications and affidavits to search a residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
> 2. Search warrants for a search of a residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
> 3. Reports, daily or other, surrounding entries to a residence located at 7620 W. Foster Avenue, Chicago Illinois on July 23, 24 and 25, 1997.
>
> 4. Inventory of property removed from a residence located a 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.

---

[2] The plaintiff filed his complaint prior to this response. Telephone contact with OIP confirmed that no appeal was filed as of February 5, 2006.

>5. Identities of all agents and government officials or employees entering a residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
>6. Copies of photographs and/or videos made of the residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
>7. Reports of the installation or removal of electronic surveillance equipment to the residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
>8. Copies of FD 597 Receipts for tape recorders, describing make, model and serial numbers corresponding to a December 22, 1994 summary of tape recordings prepared by SA John Robert Shoup and submitted by memorandum on January 3, 1995.

Plaintiff requested CGFO to "search the "I-Drive", "S-Drive" or any other electronic storage or retention system for these documents at FBI Headquarters or FBI Field Offices germaine to my request." Plaintiff also stated "This request specifically includes all "main" files and "see references" including but not limited to numbered and lettered sub-files, 1A envelopes, enclosures behind files (EBF's), bulky exhibits, control files, and "JUNE" files and reports along with FD 302, FD 209 or other FD inserts, work files, in "workbox" areas, ZyIndex files, Field Office Information Support (FOIMS) Computer Systems Files, sub files such as ELA, ELA1B, ACS Computer Files, FCI/IT Files, ELSUR Files, and any other files or systems whatever their vernacular or nomenclature." (See Exhibit F.)

(11)    By letter dated April 24, 2006 to CGFO, plaintiff made another FOIA request to CGFO. In this letter plaintiff requested "documentation relating in any way to photographs taken of a garage located at 7620 W. Foster Avenue, Chicago Illinois on July 10, 1997, including but not limited to activity sheets, time sheets and FD 2 Daily Reports for Agent John Dewik who

-6-

photographed the garage interior on July 10, 1997." **(See Exhibit G.)**

(12)   By letter dated May 12, 2006, FBIHQ returned the CGFO request stating that plaintiff's letter did not contain sufficient information to conduct an accurate search of the central records system and provided a form requesting certain information required to conduct the search. The form was completed by plaintiff, signed and dated May 18, 2006, and returned to FBIHQ. Along with the completed form, plaintiff attached a letter to David M. Hardy dated May 18, 2006. In this letter plaintiff summarized the records requested as the following:

> 1. Search warrant applications and affidavits to search a house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24, and 25, 1997.
>
> 2. Search warrants for a search of a house located at 7620 W. Foster Avenue, Chicago Illinois on July 23, 24 and 25, 1997.
>
> 3. Reports, daily or other, surrounding entries to a house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24, and 25, 1997.
>
> 4. Inventory of property removed from a residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
> 5. Identities of all agents and government officials or employees Entering a residence located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
> 6. Copies of photographs and/or videos made of the house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
> 7. Reports of the installation or removal of electronic surveillance equipment in the house located at 7620 W. Foster Avenue, Chicago, Illinois on July 23, 24 and 25, 1997.
>
> 8. Copies of FD 597 Receipts for tape recorders, describing make, model and serial numbers corresponding to a December 22, 1994 summary of tape recordings, prepared by SA John Robert Shoup and submitted by memorandum on January 3, 1995.

       9. Entries made, court ordered or other, to premises owned by the requestor, located at 7628 through 7630 W. Foster Avenue, Chicago, Illinois 60656 on February 24, 1994, or any other date.

       10. Photographs and documentation of a garage located at 7620 W. Foster Avenue, Chicago, Illinois on July 10, 1997, including but not limited to activity sheets, time sheets and FD 2 Daily Reports for Agent John Diwik. (See **Exhibit H.**)

(13)    By letter dated June 12, 2006, FBIHQ acknowledged receipt of plaintiff's FOIA/Privacy Act request and assigned it FOIPA Request Number 1050096. (See **Exhibit I.**)

(14)    By letter dated October 4, 2006, FBIHQ advised plaintiff that the material he requested was located in an investigative file exempt from disclosure pursuant to Title 5, U.S.C. § 552, §§ (b)(7)(A) and (b)(7)(C)[3]. The FBI advised plaintiff of his right to file an administrative appeal to the DOJ OIP[4]. (See **Exhibit J.**)

(15)    After additional review of the file responsive to plaintiff's request, FBIHQ decided to remove the (b)(7)(A) exemption from the material. By letter dated January 26, 2007, FBIHQ advised plaintiff that it had reviewed 220 pages and released 173 pages with redactions. The FBI advised that deletions were made pursuant to FOIA Exemptions (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E), and Privacy Act Exemption (j)(2). Plaintiff was advised that the information exempted pursuant to FOIA Exemption (b)(3) was redacted in accordance with Rule 6(e) of the Federal Rules of Criminal Procedure. Plaintiff was advised that approximately 2,600 additional pages of material were responsive to his request. Plaintiff was

---

[3] Letter inadvertently failed to cite Privacy Act Exemption (j)(2).

[4] The plaintiff filed his complaint prior to this response. Telephone contact with OIP confirmed that no appeal was filed as of February 8, 2006.

advised that if all 2,600 pages were determined to be releasable, duplication costs of $260.00 could result, representing a charge of ten cents per page. In the letter, FBIHQ requested plaintiff's written notification indicating his willingness to incur the estimated fees. The FBI advised plaintiff of his right to file an administrative appeal to the DOJ OIP. (**See Exhibit K.**)

### CHRONOLOGY OF PLAINTIFF'S FOIA/PRIVACY ACT REQUEST TO THE LOS ANGELES FIELD OFFICE

(16)    By letter dated April 21, 2006, plaintiff submitted an FOIA/Privacy Act request to LAFO for any records maintained at LAFO pertaining to "any and all documents, records, reports, audiotapes or videotapes in electronic, digital, analog or in any other format in your possession, custody or control from the arrest of Anthony Pellicano relating, in any way, whatsoever, with James R. Skrzypek or Federal Security, Inc." Plaintiff requested LAFO to "search the "I-Drive", "S-Drive" or any other electronic storage or retention system for these documents at FBI Headquarters or FBI Field Offices germaine to my request". Plaintiff also stated "This request specifically includes all "main" files and "see references" including but not limited to numbered and lettered sub-files, 1A envelopes, enclosures behind files (EBF's), bulky exhibits, control files, and "JUNE" files and reports along with FD 302, FD 209 or other FD inserts, work files, in "workbox" areas, ZyIndex files, Field Office Information Support (FOIMS) Computer Systems Files, sub files such as ELA, ELA1B, ACS Computer Files, FCI/IT Files, ELSUR Files, and any other files or systems whatever their vernacular or nomenclature." (**See Exhibit L.**)

(17)    By letter dated October 12, 2006, FBIHQ advised that a search of the LAFO automated and manual indices to the Central Records System located no records responsive to

his FOIA/Privacy Act request to the LAFO. The FBI advised plaintiff of his right to file an administrative appeal to the DOJ OIP[5]. FBIHQ also enclosed a copy of the FBI File Fact Sheet. **(See Exhibit M.)**

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(18)    The Central Records System ("CRS") enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter (or program). Certain records in this system are maintained at FBIHQ. Records which are pertinent to specific field offices of the FBI are maintained in those field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI utilizes the CRS to conduct searches that are likely to yield documents responsive to FOIA and Privacy Act requests.

(19)    Access to the CRS is afforded by the General Indices which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices. The entries in the General Indices fall into two categories:

>  (a) A "main" entry - A "main" entry, or "<u>main</u>" file, carries the name corresponding with a subject of a file contained in the CRS.

---

[5] The plaintiff filed his complaint prior to this response. Telephone contact with OIP confirmed that no appeal was filed as of December 1, 2006.

(b) A "reference" entry - "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file.

(20) Access to the CRS files at FBI field offices is also obtained through the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches made in the General Indices to locate records concerning a particular subject, such as James R. Skrzypek, are made by searching the subject requested in the index. (FBI field offices have automated indexing functions.)

(21) On or about October 16, 1995, the Automated Case Support ("ACS") was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ. Over 105 million records were converted from automated systems previously utilized by the FBI. ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases, which are:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as to set, assign, and track leads. A case is opened by the Office of Origin ("OO"), which sets leads for itself and other field offices, as needed. The offices that receive the leads are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is utilized by FBIHQ and all FBI offices and Legats that are conducting or assisting in the investigation. Using a fictitious file number "100-HQ-12345" as an example, an explanation of the UCFN is as follows: "100" indicates the classification for the specific type of investigation, which in this example denotes a "terrorism enterprise investigation;" "HQ" is the

abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "12345" denotes the individual case file number for the particular investigation.

(b) Electronic Case File – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept, where only the creator of a document serializes it into a file, providing single source entry of serials into the computerized system. All *original* serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, a 97.6 million record index, functions to index names to cases, and to search names and cases for the FBI's investigative and administrative cases. Names of individuals or organizations are recorded with identifying information, such as sex, race, event date, date or place of birth, locality, Social Security number, or address.

(22) The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, and/or essential for future retrieval. Without a "key" (index) to this enormous mass of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal national security and criminal statutes. Therefore, the General Indices to the CRS files are

the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter, i.e., James R. Skrzypek.

### ELECTRONIC SURVEILLANCE ("ELSUR") INDICES

(23)    The Electronic Surveillance ("ELSUR") indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a warrantless (consensual) electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. On or about October 9, 1991, the ELSUR indices were automated. Since that time, FBIHQ and all FBI field offices have electronically generated, maintained, modified and accessed all ELSUR records created since October 9, 1991.

(24)    The ELSUR indices are a separate system of records from the CRS and, prior to automation, consisted of index cards on individuals who had been the subject of a microphone or telephone surveillance by the FBI from 1960. As stated above, the previous manual index card system was converted to an automated system on or about October 9, 1991. These indices include individuals who were the (1) targets of direct surveillance, (2) participants in monitored conversations, and (3) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance. In addition to the names of individuals in the above categories, the card entries in the ELSUR index contain the date the voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the FBI field office that conducted the monitoring.

(25)    The ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through the

General Index and CRS. See 52 Fed. Reg. 8482 (1992).

(26) The FBI field offices that have conducted electronic surveillances at any time from 1960 to the present also maintain ELSUR indices. Since January 1, 1960, the field offices have been including in their ELSUR indices -- reporting to FBIHQ for inclusion in its index -- the names of all persons whose voices have been monitored through a FBI microphone installation or a telephone surveillance. The names of monitored subjects are retrievable through the FBIHQ or local field office ELSUR indices.

(27) Until 1969, FBI field offices were also required to forward the names of all persons mentioned during monitored conversations to FBIHQ for inclusion in the FBIHQ ELSUR index. Although FBIHQ discontinued this requirement in 1969, some field offices still include the names of individuals mentioned in monitored conversations in the field office's ELSUR index. However, the names of such persons cannot be retrieved through the FBIHQ ELSUR index.

### SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS

(28) In response to plaintiff's FOIA requests, the FBI initiated searches of its FBIHQ, CGFO and LAFO general indices to identify all potentially responsive main files. The FBIHQ used the general indices to search the CRS for files concerning plaintiff. Searches were conducted using the name "James R. Skrzypek" which would cover a six-way phonetic breakdown of the name. For example, this search would locate records using the phonetic sounds of each last and first name relating to the following names: "Skrzypek, James R.," "Skrzypek, James," and "Skrzypek, J. R.." The FBI also used plaintiff's date of birth and social security number to facilitate the identification of requested records. This search located one main investigatory file from the Chicago Field Office responsive to plaintiff's request.

(29) In the absence of a specific request for a search of reasonably described cross-references at the administrative level, the FBI's current policy is to search for and identify only "main" files responsive to FOIA/Privacy Act requests. Plaintiff specifically requested a search be conducted for cross-references at the administrative level, however, those references were not reasonably described. Upon receipt of the complaint, FBIHQ did conduct a search to locate cross-references responsive to these requests. This search identified one FBIHQ cross-reference which is duplicative of a document maintained in the Chicago main file.

(30) In response to plaintiff's specific request for electronic surveillance information, a search of the FBIHQ, Chicago, and Los Angeles indices was conducted using the same search terms as above and no responsive records were located.

## EXPLANATION OF THE "I" AND "S" DRIVE SYSTEM

(31) An "I drive" is simply a shared drive in a computer network. The "I drive" has now been renamed in many FBI field offices as shared drives with such letters as "S," "T," etc. Shared ("S") drives are found in almost every computer network. These shared computer drives are used in field offices to hold preliminary work product investigative documents drafted by FBI SAs in order to allow SSAs to review and approve them before they are finalized, uploaded, and serialized in the official investigative file. FBIHQ does not maintain an "I drive" that is similar in nature to the shared drives maintained by field offices. Since these shared drives were not likely to contain information responsive to plaintiff's request, they were not searched.

## STATUS OF PLAINTIFF'S CGFO REQUEST

(32) After FBIHQ's January 26, 2007 release of 173 pages of material to plaintiff, plaintiff filed a motion with the Court in which he stated he was only interested in documents that

"specifically apply to the search of the Skrzypek residence <u>only</u> and <u>only</u> of the Skrzypek residence as specified in Plaintiff's Amended Complaint." Instead of the 2,600 pages of material that FBIHQ determined were potentially responsive to plaintiff's request, the total number of responsive pages will decrease to approximately 300 additional pages.

(33)    As of the date of this filing, FBIHQ has not received confirmation from plaintiff that he is willing to incur the estimated fees.[6] In the absence of written notification by plaintiff, in a reasonable amount of time, of his willingness to pay, the FBI will request the Court to dismiss this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that **Exhibits A through M** attached hereto are true and correct copies.

Executed this 12th day of February, 2007.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
    Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

---

[6]Title 28, Code of Federal Regulations, Sections 16.11 and 16.49.