James R. Skrzypek
P.O. Box 1000
Duluth, MN 55814

Pro Se Plaintiff

_____

**RECEIVED**

UNITED STATES DISTRICT COURT

MAY 2 4 2007

FOR THE DISTRICT OF COLUMBIA

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

_____

|  |  |  |
|---|---|---|
| JAMES R. SKRZYPEK, | : : : | **REPLY MEMORANDUM IN SUPPORT OF DISCOVERY** |
| Plaintiff, | : : : |  |
| vs. | : : : | Civil Action No. 06 1129 (EGS) |
| UNITED STATES TREASURY DEPARTMENT, et al., | : : : | Judge Emmet G. Sullivan |
| Defendants | : : : : : : |  |

_____

_____ Plaintiff hereby submits this Reply Memorandum in Support of Discovery and in Opposition to Defendant's Motion for Protective Order.

## DISCOVERY IS AN APPROPRIATE LITIGATION TOOL

Discovery is not totally uncommon in an FOIA suit. Discovery is appropriate in a FOIA case when there is a reason to believe, as in this case, that the agency is either withholding records or did not conduct an adequate, "good faith"search for the materials. See <u>Information Acquisition Corp. v. Dept. of Justice,</u> 444 F.Supp. 458(D.C.1978). See also <u>Murphy v. Fed Bureau of Investigation,</u> 490 F.Supp 1134(D.C.1980); <u>Giza v. Sec'y of Health, Education and Welfare,</u> 628 F.2d 748,751(1st Cir.1980); <u>Niren v. INS,</u> 103 F.R.D. 10)D.OR.1984); <u>Reisberg v. Dept. of Justice,</u> 543 F.2d 308(D.C.1976). The discovery permitted under FOIA also includes depositions and interrogatories designed to disclose the "malfeasance" of government. See <u>Judicial Watch, Inc. v. United States Dept. of Commerce,</u> 127 F.Supp.2d 228(D.C.2000).[1]

The documents Plaintiff requested since April 21, 2006, were drafted with rifle shot specificity. For example, in his initial request, Plaintiff asked the FBI, IRS and U.S. Attorney's Office for documents surrounding the search of his residence.[2]

---

[1] The foregoing case law certainly disposes of FBI Defendants argument that discovery is not proper in a FOIA case. FBI Defendants also argue that the need for discovery is essentially moot since they have complied with the production of records. That argument, however, is disposed of by <u>Weisberg v. USDOJ</u>, 627 F.2d 365(D.C.1980), which holds that even after an agency claims that it has "complied substantially" with its FOIA obligations, discovery is permissible to test the veracity of that claim.

---

[2] FBI Defendants sent Plaintiff highly redacted, unresponsive documents and requested Plaintiff satisfy an obligation to pay for 2600

1

Defendants assert that Plaintiff's use of discovery in this case should not be permitted because Plaintiff is plainly using the FOIA lawsuit as a means of questioning investigatory action taken by the agency or the underlying reason for undertaking such investigations. Nothing could be further from the truth and there is no evidence, whatsoever, that suggests this, either from Plaintiff's requests, pleadings or questions presented in the interrogatories to Defendants. The documents requested for well over a year, have absolutely nothing to do with investigative techniques, reasons or rationale. The requests are specific and are certainly not a fishing expedition. The questions posed in the interrogatories are primarily designed and restricted to determining the identity of documents generated in the search of his residence.

Not one document has been produced by FBI Defendants surrounding this search[3]and the only way Plaintiff is likely to gain information related to this search is through discovery. It is

of more of the same. Plaintiff, in his initial requests and filings with this court always maintained his willingness to pay for responsive documents. See Dkt# 41. Defendants mislead this Court by stating Plaintiff sought records relating to any search warrant applications or entries onto his property.....fn.2 Emphasis added. Nowhere has Plaintiff ever asked in his requests or this instant case for search warrants, other than for his residence! Similarly, Plaintiff sought documents and records containing Anthony Pellicano having to do with Plaintiff or his  company and once again, contrary to Defendant's assertions, requests were made to the FBI Headquarters, FBI Los Angeles Field Office, U.S. Attorney for the Central District of California and NSA. Dkt#'s 1,6.

[3] The only exception being the Statement of Material Facts of Which

more than Plaintiff's belief that Defendants are aware of documents which can, directly or indirectly, reveal and explain these searches. It is likewise Plaintiff's belief that discovery will be able to provide the identity and/or document the existence of records responsive to Plaintiff's requests that have not been produced. With discovery, Plaintiff expects to demonstrate FBI Defendants malfeasance or bad faith in meeting their disclosure obligations under FOIA.

Defendants have represented that they have made a good faith effort to conduct a search for the requested records, however, Plaintiff has dmonstrated that this is not true and has provided exhibits and personal knowledge to support various attempts by Defendants to achieve summary judgment. See Dkt# 41,42.

### STATEMENT OF UNDISPUTED FACTS SUPPORTING DISCOVERY

Supreme Court Justice Brandeis said:

> Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be in peril if it fails to observe the law scrupulously. Our government is the potent, the ominipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for the law; and invites every man to become a law unto himself....

Olmstead v. United States, 277 U.S. 438, 485(1928). The words

---

There is No Genuine Issue and Sworn Declaration of IRS Special Agent Jose Franco, stating a "search" of the [Skrzypek] residence occurred.... and inventories of records made at the time were turned over to the FBI Agent in Charge at the residence... See dkt# 20.P.2 §4.

of Justice Brandeis are an appropriate background against with
to view and weigh the facts that follow, related to the govern-
ment's involvement in the subjects of Plaintiff's FOIA requests
and the lengths to which the government as gone to keep that
involvement a secret, all of which are proper subjects of discovery.
Plaintiff respectfully submits that based upon the principles
underlying FOIA, which are to inform the public about the activities
of the government, and based upon FBI Defendants' obvious bad
faith in responding to Plaintiff's FOIA requests, coupled with
the significance of the information sought by Plaintiff, the better
and just decision of this Court would be to allow discovery in
the form of interrogatories.[4]

A.    **February 24, 1994 Office Burglary**

On February 24, 1994, Plaintiff's Chicago Offices were burglar-
ized. Entry was gained through the front glass door, after it
was shattered.

1.    Plaintiff notified the Chicago Police Department and
a report was taken. (RD# YO78750).

2.    Plaintiff's Motorola 5 channel portable radio and an
office facsimile machine were the only items taken. Expensive
computer equipment, printers and valuable employee jewelry left
on top of desks, remained untouched prompting a responding Chicago

---

[4] See NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978),
FOIA is designed "to ensure an informed citizenry, vital to the functioning
of a democratic society, needed to check against corruption and to hold the
governors accountable to the governed." There could be no better use of that
law than in this case.

Police Officer to comment on the suspicious nature of the break-in.

3. On October 19, 1994, FBI Agents executed search warrants on Plaintiff's offices and Plaintiff was placed in an inner office where vertical window blinds were drawn. Through spaces in those blinds, Plaintiff observed unknown agents lifting suspended ceiling tiles and removing wires from above.

4. Plaintiff later learned that the previous office burglary is commonly referred to as a "bag job" or "black bag job" and sanctioned by the FBI. See U.S. v. Gray, 502 F.Supp 150(D.C.1980).

5. In Plaintiff's Amended Complaint, it stated that a request was made for entries to the offices on February 24, 1994. Dkt#6, P.2 §(b)(1). Additionally, FBI Defendants were requested to search "JUNE Files" for this documentation. "JUNE Files" are files that are placed in a special file room used to house especially sensitive documents. See Blanton v. U.S. Dept. of Justice, 63 F.Supp.2d 35, 42 fn.6(D.C.1999). To date, no responsive documents have been received by Plaintiff surrounding the February 24, 1994 break-in.

**B.   The Search of the Skrzypek Residence**

On July 23, 1997, both Plaintiff and his wife Janice, were arrested and jailed for 3 days in Chicago. Janice has furnished a Declaration which is attached hereto as Exhibit 1. In that Declaration, Janice provides information relative to the government's search of the Skrzypek Residence. Set out below are the facts taken from Janice's Declaration and attached exhibit, which supports allowing discovery by Plaintiff.

1.    On July 23, 24 and 25, 1997, unauthorized warrantless break-ins were conducted by agents of the FBI and IRS to the Skrzypek Residence. These entries, on each day, were observed by employees of Plaintiff.

2.    In February 2002, the trial started in Case# 97 CR 516, U.S. v. James and Janice Skrzypek.

3.    During opening arguments by the government, pictures were displayed before the jury by Assistant United States Attorney Brian Netols which showed the interior of the Skrzypek Residence.

4.    During those arguments, Janice requested the search warrants for the home from defense counsel.

5.    Defense counsel stated that he did not have them and, upon conclusion of the opening arguments, summoned Assistant United States Attorney Netols to the defense table.

6.    While still holding the pictures in his hand and in plain view and presence of Plaintiff, Janice and defense counsel, Assistant United States Attorney Netols stated that there were no warrants.

7.    On June 27, 2004, Janice was allowed access to documents in the possession of the United States Attorney's Office. Assistant United States Attorney Netols met with Janice and personally prepared a handwritten log of boxes she was to examine, listing box number and contents.

8.    While waiting for Assistant United States Attorney Netols to finish his handwritten index, Janice asked him to identify the

box containing the pictures shown the jury of the Skrzypek

Residence and Assistant United States Attorney Netols, "angrily" [4]

pointed to a specific box stating everything would be found in

there. No pictures or documents were found.

C.    **The Falsified Audiotapes**

The government used certain audiotapes in Grand Jury proceed-

ings and at trial to obtain an indictment and conviction of Plain-

tiff and his wife. These audiotapes were manufactured and falsified

and Plaintiff realized this when they were played in the offices

of defense counsel.

1.    In early 1998, a forensic audiotape expert, Steven Cain,

determined that the tapes were overrecorded, edited and had multiple

tape recorders used for their production. Ex.2 (Defense counsel

handwritten notes).

2.    Plaintiff's attempts to examine the original tapes

against the recording devices were stymied by the government.

Despite court Orders, the government represented to the court that

the original tape recorders did not exist and there was no record

of what tape recorder made the tapes. (Ex.3 p.24).

3.    On June 27, 2004, while in the United States Attorney's

Office accessing documents, Plaintiff's wife Janice discovered

previously Ordered FBI Summary Sheets of tape recordings, receipt

evidence identifying the serial number of the recorder against

---

[4] According to IRS Special Agent Jose Franco, who accompanied Janice
while at the U.S. Attorney's Office, AUSA Netols disposition was attributed to
it being his last day at the U.S. Attorney's Office and that his departure was
not voluntary.

7

the Summary Sheet, FBI enhancement evidence along with Air-Tels
and Memorandums memorializing information surrounding the audio
tapes.

4.    Plaintiff learned from the FBI Manual of Investigative
and Operational Guidelines (MIOG) and Manual of Administrative
and Operational Guidelines (MAOP) that additional documentation
exists and procedures are in place concerning electronic surveil-
ance, tape recording and the devices used for their recording.

5.    To·date, FBI Defendants have produced unresponsive
records relating to Plaintiff's FOIA requests surrounding the
audiotapes and recorders used for their creation.

6.    Recently, the Seventh Circuit Court of Appeals in Chicago
Recalled the Mandate in Case# 05-2055 and 05-2056, <u>U.S. v. James
and Janice Skrzypek</u> on motion of Plaintiff and wife Janice. (Ex.4).
Transcripts of tape recordings were submitted to the Court of
Appeals that illustrated 24 differences between the ones supple-
mented by the government, Exhibit 5, and the ones supplemented
by Plaintiff. (Ex.6). Each alteration between the two sets of
transcripts is identified on the attached summary, made part of
Exhibit 6.

D.    <u>Anthony Pellicano: "I do more tapes for the FBI than Quantico."</u>

In November 2001, Plaintiff retained Anthony Pellicano to
authenticate the audiotapes of Plaintiff and his wife Janice.

1.    In his initial conversation with Pellicano, Plaintiff
agreed to pay $2500 dollars to authenticate the audiotapes.

2.    In that conversation, Plaintiff told Pellicano that a court Order would be necessary in order for the tapes to be sent to his offices in Los Angeles, because the U.S. Attorney's Office emphatically refused to transport the tapes to the offices of audio expert Steven Cain, in Lake Geneva, Wisconsin, a distance of only 80 miles from Chicago.

3.    Pellicano assured Plaintiff that tapes are routinely brought to his offices by the FBI and that, "he does more tapes for the FBI than Quantico, [Virginia]."

4.    In the course of the next 3 weeks, Plaintiff repeatedly called Pellicano and spoke with staff and secretaries, leaving messages for a return call from Pellicano.

5.    While at his residence, Plaintiff received a conference call from defense counsel with Pellicano on the line stating, "I took the liberty of contacting the U.S. Attorney's Office and the FBI and they agreed to bring the tapes to my office."

6.    Plaintiff had confirmed this portion of the conversation, as defense counsel informed Plaintiff of these arrangements and the approval of the court as well.

7.    Plaintiff told Pellicano that the decision was made to have the tapes brought, instead, to the offices of Steven Cain in Lake Geneva, at which time the conversation ended with Pellicano angrily hanging up the phone.

8.    One year later, the FBI executed search warrants at Pellicano's offices in Hollywood, California and seized explosives,

hand grenades, cash and several handguns. Agents also seized
computers, audio/video tapes and records relating to illegal
wiretapping of several high profile Hollywood celebrities and
motion picture actors.

9.    Noteworthy to Plaintiff in that seizure was a propriet-
ary computer program named, "Audiosleuth", invented and developed
by Pellicano and an associate, that could transform simple voice/
vocal utterance, with its inflections, resonance, proclivities
and characteristics, into a completely new sentence. The program
was demonstrated earlier to a Los Angeles Times reporter before
Pellicano ran afoul of the government. (Ex.7). Also, in the raid by
the FBI, audiotapes of both incoming and outgoing telephone
calls, between Pellicano, his clients and virtually everyone
else, including his family and concubines, were seized. This was
extensively reported in various newspapers and the media and was
the subject of Plaintiff's FOIA requests which remain unresponsive.
See Dkt# 28.

10.    Plaintiff, through FOIA, seeks to determine if Pellicano
is, in any way, responsible for creating the audiotapes of Plaintiff
and his wife. (Ex's 5&6). Plaintiff seeks only documents/records
and audiotapes surrounding the conversations Pellicano had with
the U.S. Attorney's Office, FBI and himself, which is confirmed to
exist. The use of discovery, in the form of interrogatories, is
vital to identifying the existence of those documents/records,
responsive to Plaintiff's requests.

### CONCLUSION

Last Thursday, May 17, 2007, marked 2 years since both Plaintiff and his wife surrendered to federal prison. It has been over a year since Plaintiff has been trying to obtain documents through the exercise of his rights under the FOIA, which clearly has not occurred.

Rather than stepping forward and meeting their FOIA obligations in accordance with the law, FBI Defendants' have chosen a pattern of releasing a series of unresponsive, highly redacted documents, in an effort to show compliance and not one of these documents have shown that.

Under the facts and history of this case, Plaintiff respectfully submits that he should be given the opportunity to conduct discovery, through interrogatories, for the purpose of fully exploring, with these individual agents, any knowledge they may have that, directly or indirectly, relates to events that are are subjects of Plaintiff's FOIA requests.

Plaintiff has shown through personal knowledge and observation, undisputed evidence supporting the existence of documents that have thusfar been withheld. Discovery is crucial in identifying these documents from those who prepared them or possess knowledge of who did.

James R. Skrzypek

# EXHIBIT   1

James R. Skrzypek
P.O. Box 1000
Duluth, MN 55814

Pro Se Plaintiff

---

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| JAMES R. SKRZYPEK, | : | **DECLARATION OF** |
| | : | **JANICE M. SKRZYPEK** |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action No. 06 1129 (EGS) |
| | : | |
| UNITED STATES TREASURY | : | |
| DEPARTMENT, et al., | : | Judge Emmet G. Sullivan |
| | : | |
| Defendants | : | |

---

Pursuant to 28 U.S.C § 1746 and based upon my personal knowledge, I, Janice M. Skrzypek, do hereby certify, verify and state under penalty of perjury as follows:

1.    I am currently an inmate in the Bureau of Prisons in Pekin, Illinois. My federal registry number is 08374-424.

2.    Shortly after my release from custody, on July 25, 1997, certain employees informed me and my husband that the FBI had been inside our residence over the 3 days we were jailed.

3.    At trial, and during opening arguments, Assistant United States Attorney Brian Netols, displayed pictures of our residence in front of the jury. He told the jury that they would see pictures of our house and it was nothing short of opulence on the inside.

4.    While the arguments continued, I requested to see the search warrants for the pictures from defense counsel. Defense counsel told me that he did not have them and summoned Assistant United States Attorney Netols to the defense table upon conclusion of the arguments.

5.    While still holding interior pictures of our home in his hands, Assistant United States Attorney Netols told defense counsel and us that there were no warrants.

6.    On June 27, 2004, I was present at the location of the United States Attorney's Office in Chicago to examine documents. I was given a hand written log of the contents of the boxes I was to examine by Assistant United States Attorney Netols, who personally prepared the logs.

7.    While waiting for the completion of the index, I asked Assistant United States Attorney Netols what box contained the pictures that were shown to the jury and he angrily pointed to

to a box and told me that everything was in there. When I examined the box, no pictures or related documents were found.

8.    I was informed later that the reason for the outburst by Assistant United States Attorney Netols was that it was his last day at the [United States Attorney's] Office and he was not leaving voluntarily and was asked to leave. That information was given to me by IRS Special Agent Jose Franco, who accompanied me during my stay.


_____
Janice M. Skrzypek


Janice M. Skrzypek 08374-424
P.O. Box 5000
Pekin, Illinois 61555-5000

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES R. SKRZYPEK

    Plaintiff,

  v.

UNITED STATES TREASURY DEPARTMENT,
et al.,

    Defendants

)
)
)
)
)
)
)
)
)
)

Civil Action No. 06 1129
(EGS)

## NOTICE OF FILING AND PROOF OF SERVICE

To:  Clerk, United States District Court, District of Columbia
   333 Constitution Avenue, N.W., Washington, DC 20001-2802

   Madelyn E. Johnson, ASsistant United States Attorney, 555 4th
   Street, N.W. 10th Floor, Rm. E4114, Washington, DC 20535

   PLEASE TAKE NOTICE, that on May 22, 2007, the undersigned mailed

one original with exhibits of Plaintiff's Reply Memorandum in Support

of Discovery to the Clerk, United States District Court for the

District of Columbia, with postage prepaid and by placing them in

the United States Mail on May 22, 2007 in Duluth, Minnesota.

James R. Skrzypek
P.O. Box 1000
Duluth, MN 55814

Received
Mail Room
MAY 24 2007
Nancy Mayer Whittington, Clerk
U.S. District Court, District of Columbia