UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES R. SKRZYPEK, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 06-1129 EGS |
| | * |
| UNITED STATES TREASURY | * |
| DEPARTMENT, et al., | * |
| | * |
| Defendants. | * |
| | ***** |

## DEFENDANT NATIONAL SECURITY AGENCY'S
## RENEWED MOTION FOR SUMMARY JUDGMENT

The National Security Agency (NSA), through undersigned counsel, respectfully renews

its motion for summary judgment in this Freedom of Information Act case, and pursuant to the

Court's Order of August 9, 2007, files the Declaration of Rhea D. Siers, Deputy Associate

Director for Policy and Records for NSA, in support thereof.

Accordingly, for the reasons set forth in this renewed motion and the record as a whole,

judgment should be entered for defendant NSA.

Respectfully submitted,

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

MADELYN JOHNSON, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.  Rm. E-4114
Washington, D.C.  20530
(202) 514-7135

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES R. SKRYZPEK,                    *
                                      *
             Plaintiff,               *
                                      *
      v.                              *        Civil Action NO. 06-1129
                                      *
UNITED STATES TREASURY,               *
DEPARTMENT, et al.,                   *
                                      *
             Defendants.              *
                                   *****


## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff, James R. Stryzpek, challenges the National Security Agency's ("NSA"

or "Agency") determination that it could not locate any records responsive to his request

for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff's

FOIA request seeks records from Anthony Pellicano that relate to Plaintiff or Federal

Security, Inc. See Giles Declaration ("Decl."), Exhibit ("Exh."). 1. On October 23,

2006, the National Security Agency ("NSA" or "Agency"), in its Motion to Dismiss in

Part or, in the Alternative, for Summary Judgment in Part, submitted a declaration from

its former Director of Policy, Louis F. Giles, defending its determination that it had

conducted a reasonable search for records responsive to Plaintiff's FOIA request, but that

it could not locate responsive records. This Court concluded, however, that Mr. Giles'

declaration did not sufficiently describe NSA's filing systems, its information retrieval

methods and the search methods and terms used in processing Plaintiff's FOIA request

and by Order dated August 30, 2007, directed NSA to supplement the record with a

detailed description of its search for responsive records, and to renew its motion for summary judgment. Accordingly, the NSA is providing a supplemental declaration and has renewed its Motion for Summary Judgment. The evidence is clear that summary judgment is warranted because NSA's declarations describe the justifications for non-disclosure with reasonably specific detail; demonstrate that the information withheld logically falls within the claimed exemptions; and show that the justifications are not controverted by evidence in the record or by evidence of bad faith on the part of NSA. Military Audit Project v. Casey, 211 U.S. App. D.C. 135, 656 F.2d 724, 738 (D.C. Cir.1981).

## ARGUMENT

## A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is the procedural vehicle by which most FOIA claims are resolved. "In a suit brought to compel production of records, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested has either been produced . . . or is wholly exempt from FOIA's inspection requirements.'" Wheeler v. CIA, 271 F. Supp. 2d 132, 136 (D.D.C. 2003) (quoting Students Against Genocide v. Dep't of State, 347 U.S. App. D.C. 235, 257 F.3d 828, 833 (D.C. Cir. 2001)).

Generally, the FOIA envisions a policy favoring disclosure of federal agency records. See e.g., CIA v. Sims, 471 U.S. 159, 166-67, 85 L.Ed. 2d 173, 105 S. Ct. 1881 (1985). Generally, the primary goal of the PA "is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." Henke v. Dep't of Commerce, 83

2

F.3d 1453, 1456, 317 U.S. App. D.C. 405 (D.C. Cir. 1996). However, both the FOIA and PA recognize that certain federal agency records should not be subject to public disclosure, and they provide statutory exemptions from disclosure. See 5 U.S.C. § 552(b) (FOIA); 5 U.S.C. §552a(k) (PA).

At summary judgment, the agency bears the burden of non-disclosure by justifying the exemption claimed, and the court determines *de novo* whether the exemption claimed is appropriate. See 5 U.S.C. § 552(a)(4)(B) (FOIA); 5 U.S.C. §552a(g)(2)(A) (PA). An agency may meet its burden by submitting a reasonably detailed affidavit explaining why the requested information falls within the exemption claimed. See Minier v. CIA, 88 F.3d 796, 800 (9th Cir. 1996)

Summary judgment should be granted if the agency has shown, when the facts are viewed in the light most favorable to the nonmovant, that there are no genuine issues of material fact and that the agency is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Greene v. Dalton, 164 F.3d 671, 674 (D.C. Cir. 1999). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

In a FOIA case, summary judgment is warranted if the agency's affidavit: (1) describes the justifications for non-disclosure with reasonably specific detail; (2) demonstrates that the information withheld logically falls within the claimed exemptions; and (3) shows that the justifications are not controverted by evidence in the

record or by evidence of bad faith on the part of the agency.  See Hunt v. CIA, 981 F.2d

1116, 1119 (9th Cir. 1992); Military Audit Project v. Casey, 211 U.S. App. D.C. 135, 656

F.2d 724, 738 (D.C. Cir.1981). However, in determining whether an agency's claimed

exemption is appropriate, the court is to accord substantial weight to the agency's

affidavits in support of the exemption claimed.  See Hunt, 981 F.2d at 1119 (citing Miller

v. Casey, 235 U.S. App. D.C. 11, 730 F.2d 773, 776, 778 (D.C. Cir. 1984).  The court is

to accord substantial weight to the agency's affidavits because the "Executive

departments responsible for national defense and foreign policy matters have unique

insights into what adverse affects might occur as a result of public disclosures of a

particular classified record.  Military Audit Project v. Casey, 211 U.S. App. D.C. 135,

656 F.2d 724, 738 (D.C. Cir.1981).

　　　Indeed, courts have routinely and repeatedly emphasized that "weigh[ing] the

variety of complex and subtle factors in determining whether disclosure of information

may lead to an unacceptable risk of compromising the [nation's] intelligence-gathering

process" is a task best left to the Executive Branch and not attempted by the judiciary.

Sims, 471 U.S. at 180; see also Center for Nat'l Security Studies, 331 F.3d at 928 ("the

judiciary is in an extremely poor position to second- guess the executive's judgment in

[the] area of national security"); Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980)

("Judges . . . lack the expertise necessary to second-guess [] agency opinions in the

typical national security FOIA case").  Thus, courts have "consistently deferred to

executive affidavits predicting harm to the national security, and have found it unwise to

undertake searching judicial review." Center for Nat'l Security Studies, 331 F.3d at 927.

Instead, "[a]t least in the national security context, the reviewing court must give

'substantial weight'" to an agency's declarations. <u>ACLU I</u>, 265 F. Supp. 2d at 27

(quoting <u>King v. Dept. of Justice</u>, 830 F.2d 210, 217 (D.C. Cir. 1987)).

Given these standards of review, as the discussion below and in the

accompanying declaration demonstrates, NSA conducted a proper and reasonable search

to locate records responsive to Plaintiff's FOIA request, but that no such records exist.

Additionally, to the extent that Plaintiff's FOIA request encompasses a request on

whether or not NSA assisted the Federal Bureau of Investigation ("FBI") in allegedly

decrypting Mr. Pellicano's computer as suggested by Plaintiff for the first time in his

Opposition, then NSA's determination that it cannot acknowledge the existence or non-

existence of such information is proper as any confirmation or denial would disclose

information that is currently and properly classified in accordance with Executive Order

("E.O.") 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order

13292, 68 Fed. Reg. 15315 (Mar. 25, 2003) (hereinafter "E.O. 12958, as amended") and

thus exempt from disclosure pursuant to FOIA Exemption One, 5 U.S.C. § 552(b)(1).

Further, acknowledging the existence or non-existence of this requested information is

precluded by federal statute, Section 6 of the National Security Agency Act of 1959, Pub.

L. No. 86-36, § 6, 73 Stat. 63, 64, <u>codified</u> at 50 U.S.C. § 402 note, and thus is exempt

from disclosure pursuant to FOIA Exemption Three, 5 U.S.C. § 552(b)(3).

### B. NSA'S SEARCH WAS ADEQUATE

To obtain summary judgment on the issue of the adequacy of the records search,

an agency must show that "viewing the facts in the light most favorable to the requester,

. . . [it] has conducted a search reasonably calculated to uncover relevant documents."

<u>Steinberg v. Dept. of Justice</u>, 23 F.3d 548, 552 (D.C. Cir.1994) (citing <u>Weisberg v. Dept.</u>

of Justice, 745 F.2d 1476, 1485 (D.C. Cir.1984)) (internal quotes omitted).  An agency

must show that it made a "good faith effort to conduct a search for the requested records,

using methods which can be reasonably expected to produce the information requested."

Ogelsby, 920 F.2d at 68; accord Campbell, 164 F.3d at 27.  An agency's search need not

be exhaustive, merely reasonable.  See Western Ctr. for Journalism v. Internal Revenue

Serv., 116 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing Shaw v. Dept. of State, 559 F.Supp.

1053, 1057 (D.D.C. 1983)); see also Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir.

1986) ("[i]t would be unreasonable to expect even the most exhaustive search to uncover

every file"); Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (Collyer,

J.) ("Perfection is not the standard by which the reasonableness of a FOIA search is

measured.").

     In establishing the guidelines under which a Court is to evaluate the adequacy of a

FOIA search, Courts have stressed that the process of conducting a "reasonable" search is

a process that requires "both systemic and case-specific exercises of discretion and

administrative judgment and expertise" and is "hardly an area in which the courts should

attempt to micro- manage the executive branch."  Schrecker v. U.S. Dept. of Justice, 349

F.3d 657, 662 (D.C. Cir. 2003) (quoting Johnson v. Exec. Office of U.S. Attorneys, 310

F.3d 771, 776 (D.C. Cir. 2002)).  Thus, there is no "bright-line set of steps for any agency

to take" in searching in response to a FOIA request.  Schrecker, 349 F.3d at 662; rather,

"the adequacy of an agency's search is measured by a 'standard of reasonableness' and is

dependent upon the circumstances."  Id. (quoting Truitt v. Dept. of State, 897 F.2d 540,

542 (D.C. Cir. 1990) (internal citation omitted)).  In examining the adequacy of an

agency's search, therefore, the Court must not address "whether there might exist

additional documents possibly responsive to a request, but rather whether the search for those documents was adequate." Steinberg, 23 F.3d at 551 (citing Weisberg, 745 F.2d at 1485). In the absence of contrary evidence, agency affidavits or declarations describing such a reasonable and adequate search are sufficient to demonstrate an agency's compliance with FOIA. Perry v. Block, 684 F.2d 121, 127 (D.C.Cir.1982).

NSA has conducted an appropriate search in this case. Plaintiff sought records from Anthony Pellicano that pertain to him or Federal Security Inc. Giles Decl., Exh. 1. Plaintiff provided no other information with his FOIA request. Given NSA's two-fold mission--signals intelligence and protection of U.S. Government communications-- and Plaintiff's language used in his FOIA request, NSA conducted a search of its affiliate databases (databases on its current and former employees, military members, contractors, visitors, and applicants) for responsive records as NSA would not likely have records on Plaintiff, Mr. Pellicano or Federal Security Inc. unless they had some current or former affiliation with NSA. These databases possess information on NSA affiliates, and were the locations that would have responsive records, if such records existed. Giles Decl. ¶¶ 3, 9; Rhea D. Siers Declaration ("Decl."), ¶¶ 4-6.

It should be noted that Plaintiff never raised any argument that the Agency's interpretation of his FOIA/PA request and/or its search for responsive records was inadequate during the administrative processing of his FOIA/PA request. In fact, Plaintiff filed a civil action before he even received NSA's response to his FOIA request, and thus did not exhaust his administrative remedies. Additionally, Plaintiff never raised this claim that the Agency's search was unreasonable in his civil complaint, but rather,

only raised a claim that the NSA's search was inadequate in response to the Agency's original Motion for Summary Judgment.

Finally, to the extent that Plaintiff's request could be interpreted to encompass a claim for information regarding whether the NSA assisted the FBI in allegedly decrypting Mr. Pellicano's computer as set forth (for the first time) in Plaintiff's opposition to Defendant's initial motion for summary judgment, then NSA would not have conducted a search for responsive records as it could not acknowledge the existence or non-existence of such information. Siers Decl. ¶¶ 7, 11-12, 14-15.

### C. NSA properly failed to disclose the existence or non-existence of responsive information based on the first exemption of the FOIA.

#### (1) Standards Governing FOIA Exemption (b)(1)

FOIA Exemption (b)(1) protects records that are: (1) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (2) are in fact properly classified pursuant to Executive Order. See 5 U.S.C. § 552 (b)(1). Section 1.2(a)(4) of E.O. 12958, as amended, states that an agency may classify information that fits into one or more of the Executive Order's categories for classification when the appropriate classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." Defendant's Exhibit 1. Thus, in order to properly invoke Exemption One, the agency must provide "detailed and specific" information demonstrating both "why the material has been kept secret and why such secrecy is allowed by the terms of an existing executive order." ACLU I, 265 F. Supp. 2d at 27.

An agency's burden in this regard is "not especially onerous." ACLU I, 265 F. Supp. 2d at 29. The issue for the Court is whether "on the whole record, the Agency's judgment objectively survives the test of reasonableness, good faith, specificity and plausibility in the field of foreign intelligence in which [the agency] is expert and has been given by Congress a special role." Gardels, 689 F.2d at 1105. Although the agency bears the burden of proving its claim for exemption, see 5 U.S.C. § 552(a)(4)(B); Miller, 730 F.2d at 776, because agencies have "unique insights" into the adverse effects that might result from public disclosure of classified information, the courts must accord "substantial weight" to an agency's affidavits justifying classification. Military Audit Project, 656 F.2d at 738; see also Environmental Protection Agency v. Mink, 410 U.S. 73, 84 (1973) (FOIA is not intended "to subject executive security classifications to judicial review at the insistence of anyone who might seek to question them"); Schaffer v. Kissinger, 505 F.2d 389, 390 (D.C. Cir. 1974) ("The district court is not free to inquire into 'the soundness of executive security classifications.'").

Thus, to carry its burden of demonstrating the propriety of its decisions supporting its Exemption 1 position, NSA "must demonstrate a logical connection between the information and the claimed exemption." ACLU I, 265 F. Supp. 2d at 29-30. In reviewing the claims made by the NSA, the Court "is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions." Halperin, 629 F.2d at 148; see Weissman v. Central Intelligence Agency, 565 F.2d 692, 697 (D.C. Cir. 1997) (recognizing that "[f]ew judges have the skill or experience to weigh the repercussions of disclosure of intelligence information"). To do so would violate the principle of according substantial weight to the expert opinion of the agency. See Stillman v. Central

9

Intelligence Agency, 319 F.3d 546, 548 (D.C. Cir. 2003) (criticizing district court for failing to "evaluate the pleadings and affidavits to be submitted by the Government in defense of classification decision," thereby erroneously withholding deference ordinarily owed to national security officials). Instead, the Court must "take seriously the government's predications about the security implications of releasing particular information to the public . . . ," ACLU I, 265 F. Supp. 2d at 28, and "recognize that the executive branch departments responsive for national security and national defense have unique insights and special expertise concerning the kind of disclosures that may be harmful." Id. at 27 (citing Krikorian v. Dept. of State, 984 F.2d 461, 464 (D.C. Cir. 1993); Salisbury v. United States, 690 F.2d 966, 970 (D.C. Cir. 1982); and Military Audit Project, 656 F.2d at 738).

### (2) NSA's Glomar response is proper

NSA's refusal to confirm or deny plaintiff's request for information related to NSA's alleged assistance to the FBI in decrypting Mr. Pellicano's computer as claimed in certain media articles, is a proper response to a request for information of this type. Id. An agency's decision to neither confirm nor deny the existence of responsive records is commonly known as a "Glomar" response in reference to the subject of a FOIA request for records pertaining to a ship, the "Hughes Glomar Explorer." See Phillippi v. Central Intelligence Agency, 546 F.2d 1009 (D.C. Cir.1976). The invocation of the Glomar response is appropriate when "to confirm or deny the existence of records . . . would cause harm cognizable under a FOIA exemption." Gardels, 689 F.2d at 1103.

NSA's refusal to confirm or deny the existence of documents in response to Plaintiff's request, which if it is construed to seek information regarding whether NSA

assisted the FBI in an alleged decryption effort is rooted in FOIA Exemptions (b)(1) and

(b)(3).  Siers Unclassified Decl., 7, 9-15.  Because of the highly classified nature of

NSA's signals intelligence and information assurance mission, NSA cannot confirm

publicly in any particular case whether or not it assisted the FBI in a law enforcement

matter:

> Quite simply, NSA's confirmation or denial that it has
> assisted law enforcement in decryption efforts would allow
> individuals to include our adversaries to accumulate
> information and draw conclusions about NSA's technical
> capabilities and ascertain which cryptologic systems are
> complex and which are easy to break.  For example, if NSA
> were to admit publicly that it did not assist law enforcement
> in decryption efforts in a particular case, but in response to
> a separate information request about another case (i.e.
> Person A) state only that no response could be made, this
> would give rise to the inference that NSA provided
> cryptologic assistance in Person A's case.  This fact would
> reveal which cryptologic systems are easy or difficult to
> exploit, and it could allow individuals, to include our
> foreign adversaries, to enact countermeasures to avoid
> exploitation of their communications.

Siers Decl. ¶ 11.  Thus, if disclosed, this information could reasonably be expected to

cause damage to the national security.  Siers Decl. ¶ 11; see also Gardels, 689 F.2d at

1104 (describing the dangers of accumulated information that might be provided in

response to FOIA requests); Gordon v. Fed. Bureau of Investigation, 388 F. Supp. 2d

1028, 1037 (N.D. Cal. 2005) (same).  Therefore, the fact of the existence or nonexistence

of NSA's assistance to the FBI in this alleged decryption effort is a currently and

properly classified matter in accordance with Executive Order 12958, as amended.

People for the American Way, 462 F.Supp. 2d at 31-32; Marrero v. U.S. Dept. of Justice,

622 F .Supp. 51, 53 (D.D.C. 1985) (upholding, under Exemption (b)(1), agency decision

refusing to confirm or deny whether particular individuals were the target of surveillance under a Foreign Intelligence Surveillance Court warrant).

## D.  NSA Properly Issued a Glomar Response Based on FOIA Exemption (b)(3).

### (1)  Standards Governing Exemption (b)(3)

Exemption (b)(3), which is set forth at 5 U.S.C. § 552(b)(3), is intended to protect information from disclosure under FOIA that Congress has separately determined warrants special protection.  Thus, FOIA "does not apply to matters that are – . . . specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  Id.  In examining an Exemption (b)(3) claim, a court must determine, first, whether the claimed statute is a statute of exemption under FOIA, and second, whether the withheld material satisfies the criteria of the exemption statute.  See Sims, 471 U.S. at 167; Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).

Evaluating whether documents are properly withheld under Exemption (b)(3) presents considerations "distinct and apart from the other eight exemptions."  Fitzgibbon, 911 F.2d at 761 (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)).  When Congress has enacted statutes that particularly identify certain categories of information that are exempt from public disclosure notwithstanding the requirements of FOIA, Congress makes "manifest" its intent to require the withholding of documents falling within the terms of those statutes. Fitzgibbon, 911 F.2d at 761; see also id. at 764 ("exemption statutes were congressionally

12

designed to shield processes at the very core of the intelligence agencies – intelligence-collection and intelligence-source evaluation"). "A specific showing of potential harm to national security . . . is irrelevant to the language of [an Exemption (b)(3) statute]. Congress has already, in enacting the statute, decided that disclosure of [the specified information] is potentially harmful." Hayden v. National Security Agency, 608 F.2d 1381, 1390 (D.C. Cir. 1979). Thus, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" Fitzgibbon, 911 F.2d at 761-62 (quoting Assoc. of Retired R.R. Workers, 830 F.2d at 336, and Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978)).

The applicable statute that NSA has used to withhold NSA names in the documents released to Plaintiff is Section 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, which provides:

> [N]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the **activities thereof,** or of the names, titles, salaries, or number of persons employed by such agency.

Id. (emphasis added). It is well established that Section 6 "is a statute qualifying under Exemption 3." The Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Security Agency, 610 F.2d 824, 828 (D.C. Cir. 1979); accord Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1389 (D.C. Cir. 1979). Section 6 reflects a "congressional judgment that in order to preserve national security, information elucidating the subjects specified ought to be safe from forced exposure." Church of Scientology, 610 F.2d at 828. In enacting Section 6, Congress was "fully aware of the 'unique and sensitive'

activities of the [NSA] which require 'extreme security measures.'" Hayden, 608 F.2d at 1390 (citing legislative history). Thus, as the Court of Appeals has held, "[t]he protection afforded by section 6 is, by its very terms, absolute. If a document is covered by section 6, NSA is entitled to withhold it. . . ." Linder v. Nat'l Security Agency, 94 F.3d 693, 698 (D.C. Cir. 1996).

**(2) NSA properly invoked FOIA Exemption (b)(3) in providing a Glomar response.**

The fact of the existence or nonexistence of NSA's assistance to the FBI in an alleged decryption effort of Mr. Pellicano's computer is also protected from disclosure by federal statute and, thus, properly withheld under Exemption (b)(3). Siers Decl. ¶ 15. Acknowledging the existence or nonexistence of NSA's assistance to law enforcement in a particular case would reveal NSA's organization, functions and activities by revealing which activities NSA is involved in and the methods by which it conducts its cryptologic activities. Id.. This information is protected from disclosure by Section 6 of the National Security Agency Act of 1959. Thus, any disclosure other than a Glomar response is prohibited by statute, and NSA properly refused to confirm or deny the existence of the information plaintiff requested under FOIA Exemption (b)(3). See Gardels, 689 F.2d at 1104 (upholding, under Exemption 3, intelligence agency's refusal to confirm or deny the identity of persons with whom it had covert contacts). Accordingly, summary judgment should be granted to NSA.

**CONCLUSION**

For the reasons stated herein and in the supporting declaration, the NSA has acted properly in responding to the plaintiff's FOIA/PA request. As a result, the NSA is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56.

14

Respectfully submitted,


JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


MADELYN JOHNSON, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.  Rm. E-4114
Washington, D.C.  20530
(202) 514-7135

CERTIFICATE OF SERVICE

I CERTIFY that on September, 11 2007, plaintiff was served with a copy of the foregoing

Renewed Motion for Summary Judgment via first-class mail postage prepaid and addressed:


James R. Skrzypek
#08324-424
POB 1000
Duluth, MN 55814


Madelyn E. Johnson
Assistant U.S. Attorney
555 4th Street, N.W., Rm. E4114
Washington, D. C. 20530
(202) 514-7135