IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES R. SKRZYPEK, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 06-1129 (EGS) |
| UNITED STATES DEPARTMENT, OF TREASURY, et al., | * |
| Defendants. | * |

**DECLARATION OF RHEA D. SIERS**

I, Rhea D. Siers, declare as follows:

1. I am the current Deputy Associate Director for Policy and Records for the National Security Agency ("NSA" or "Agency"). I have served with NSA for 25 years, and prior to my current assignment, I held various leadership positions throughout the Agency. As the Deputy Associate Director for Policy and Records, I am responsible for the processing of all requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a (2000) for NSA records. It is also my responsibility to assert the FOIA/PA exemptions in the course of litigation.

2. In addition, I am a TOP SECRET classification authority, pursuant to Section 1.3 of Executive Order 12958, as amended 25 March 2003. Through the exercise of my official duties as Deputy Associate Director for Policy and Records, I have become familiar with the current litigation arising out of requests for records filed by Plaintiff, James R. Skrzypek.

3. The purpose of this declaration is to respond to the Court's Order that NSA supplement the record with a detailed description of the search it undertook to locate records responsive to Plaintiff's FOIA request. This declaration also supplements the previous declaration submitted by NSA's former Director of Policy, Louis F. Giles, because Plaintiff, for the first time as outlined in his Opposition to the NSA's motion for summary judgment, now seeks information on whether NSA assisted the Federal Bureau of Investigation in decrypting information from Mr. Pellicano's computer as alleged in certain media accounts. See Plaintiff's Opposition, Exhibits 4 and 5.

4. Plaintiff's FOIA/PA request dated June 12, 2006 was submitted on a boilerplate form letter and sought the following: "Any and all documents, records, reports, audiotapes or videotapes, in electronic, digital, analog or in any other format in your possession, custody or control obtained in any way, including but not limited to, deciphered encrypted format, from Anthony Pellicano, relating, in any way, whatsoever, with James R. Skrzypek or Federal Security Inc." See Giles Decl., Exhibit 1. Plaintiff provided no other information with his FOIA request. For example, Plaintiff never explained his relationship with Anthony Pellicano and/or Federal Security Inc., and why he believed that NSA would have records responsive to his FOIA request. Further, Plaintiff did not wait to receive NSA's response to his FOIA request, which was sent to Plaintiff on July 21, 2006, before filing his amended complaint to add NSA as a defendant in this civil action. Had Plaintiff waited to receive NSA's response, he could have, on appeal, provided the information he submitted with his Opposition, to clarify what he was seeking in his FOIA request.

5. In response to Plaintiff's request, NSA conducted a search for responsive records using as search terms Plaintiff's name, Anthony Pellicano's name, and "Federal Security Inc." NSA searched all of its databases that would contain information on current or former NSA affiliates (employees, applicants, military members, contractors, and visitors). NSA searched for responsive records in the following databases: PEOPLESOFT Master Index, CI, UFT, CASE MANAGEMENT, CCR VISIT REQUEST, BADGE, SPECIAL ACCESS, TRAINING, AND SECURITY PROFILE. These are the databases that would contain records responsive to Plaintiff's request, if they existed, as they are the databases that would maintain records on current and former NSA affiliates. No responsive records were located, and Mr. Giles, NSA's former Director of Policy, informed Plaintiff of this fact by letter dated 21 July 2006.

6. The FOIA/PA Office's search of its affiliate databases was proper and reasonable in light of the plain language used by Plaintiff in his request for records. As explained by Louis F. Giles in his declaration, NSA's mission is to protect Government communications and to conduct signals intelligence. Accordingly, NSA would not likely possess records on Plaintiff, Anthony Pellicano or Federal Security Inc., unless these two individuals and this company had a current or past affiliation with the Agency. Thus, NSA's search for responsive records in its affiliate databases was reasonable. It should be noted that Plaintiff never sought, nor could it be inferred from his request, that he was seeking records on whether NSA assisted the Federal Bureau of Investigation as it relates to Mr. Pellicano. Again, Plaintiff provided no context to explain his relationship with Mr. Pellicano and/or Federal Security Inc. to enable NSA to reach any other conclusion than to conduct a search of its affiliate databases.

7. Plaintiff, in his Opposition, appears to be seeking records on whether NSA had provided assistance to the Federal Bureau of Investigation ("FBI") in decrypting Mr. Pellicano's computer as alleged in certain media articles. As stated above, given the plain language of Plaintiff's FOIA request, NSA's search for responsive records in its affiliate databases was reasonable and proper. However, in light of Plaintiff's Opposition, which in essence is a new FOIA request for records on whether NSA assisted the FBI in allegedly decrypting Mr. Pellicano's computer, I have also submitted this declaration to explain to the Court that NSA cannot acknowledge the existence or non-existence of information concerning its support to the FBI, as alleged in some media articles, in decrypting Mr. Pellicano's computer, or in any particular law enforcement case, as any such response would disclose information that is currently and properly classified in accordance with Executive Order 12958, as amended March 25, 2003. Further, any confirmation or denial by NSA of its assistance to law enforcement in a particular case is precluded by statute, Section 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note Accordingly, if this Court considers Plaintiff's request to encompass a request for information regarding whether NSA assisted the FBI in allegedly decrypting Mr. Pellicano's computer, then the existence or non-existence of this information is exempt from disclosure pursuant to the FOIA Exemptions One and Three.

## ORIGIN AND MISSION OF NSA

8. NSA was established by Presidential Directive in 1952 as a separately organized agency within the Department of Defense. See Executive Order 12333, Section 1.12(b). NSA's cryptologic mission has three functions: to collect, process, and

disseminate SIGINT information for national foreign intelligence purposes; to conduct information security activities; and to conduct operations security training for the United States Government.

## FOIA EXEMPTION ONE

9. Exemption One of the FOIA protects the release of matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of the national defense or foreign policy and are in fact properly classified pursuant to such Executive Order. 5 U.S.C. § 552(b)(1). The current Executive Order, which establishes such criteria, is Executive Order 12958, as amended 25 March 2003.

10. Executive Order 12958 Section 1.4 provides that information may not be considered for classification unless it falls within seven specifically enumerated categories of information. The information at issue in this case (confirming the existence or non-existence that NSA assisted the FBI in decrypting Mr. Pellicano's computer) pertain to categories of classified information found in Section 1.4 (c), intelligence activities (including special activities), intelligence sources and methods, or cryptology.

11. Additionally, confirming the existence or non-existence of responsive records would disclose information that is currently and properly classified CONFIDENTIAL pursuant to Executive Order 12958, as amended 25 March 2003, sections 1.2.(3), because such a positive or negative response reasonably could be expected to cause damage to the national security. Further, any details, such as the success or failure of decryption efforts, would raise the classification level. Quite simply, NSA's confirmation or denial that it has assisted law enforcement in decryption efforts would allow individuals to include our adversaries to accumulate information and draw conclusions about NSA's technical

capabilities and ascertain which cryptologic systems are complex and which systems are easy to break. For example, if NSA were to admit publicly that it did not assist law enforcement in decryption efforts in a particular case, but in response to a separate information request about another case (i.e. Person A) state only that no response could be made, this would give rise to the inference that NSA provided cryptologic assistance in Person A's case. This fact would reveal which cryptologic systems are easy or difficult to exploit, and it could allow individuals, to include our foreign adversaries, to enact countermeasure to avoid exploitation of their communications.

12. Accordingly, since I reviewed the information sought by Plaintiff and determined that any NSA response acknowledging the existence or non-existence of the requested information pertains to information that meets the criteria for classification under Executive Order 12958, as amended, and determined that any such confirmation of the existence or non-existence of such information would reveal information that is currently and properly classified CONFIDENTIAL, the information sought by Mr. Skrzypek is properly exempt from disclosure pursuant to FOIA Exemption 1.

### FOIA EXEMPTION THREE

13. The FOIA protects the release of matters that are specifically exempted from disclosure by statute, provided that the relevant statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matter to be withheld. See 5 U.S.C. § 552(b)(3). Information about NSA's cryptologic efforts directly relates to the Agency's most core functions and activities. These functions and activities are protected from public disclosure by statutes. Congress has passed these

6

statutes to protect the fragile nature of NSA's cryptologic efforts, including, but not limited to, the existence and depth of signal intelligence-related analytical successes, weaknesses and exploitation techniques.

14. The applicable statute in this case is a statutory privilege unique to NSA. NSA's statutory privilege is set forth in section 6 of the National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. § 402 note). Section 6 of the NSA Act provides that "[n]othing in this Act or any other law . . . **shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof,** . . . " (emphasis added). By this language, Congress expressed its finding that disclosure of any information relating to NSA activities is potentially harmful. The courts have held that the protection provided by this statutory privilege is, by its very terms, absolute. See, e.g., Linder v. NSA, 94 F. 3d 693 (D.C. Cir. 1996). Section 6 states unequivocally that, notwithstanding any other law, including the FOIA, NSA cannot be compelled to disclose any information with respect to its activities. See Hayden v. NSA, 608 F.2d 1381 (D.C. Cir. 1979). Further, while in this case the harm would be very serious, NSA is not required to demonstrate specific harm to national security when invoking this statutory privilege, but only to show that the information relates to its activities. Id. To invoke this privilege, NSA must demonstrate only that the information sought to be protected falls within the scope of section 6. Id. NSA's functions and activities are therefore protected from disclosure regardless of whether or not the information is classified. Id.

15. As set forth above, NSA cannot acknowledge the existence or non-existence of the information sought by Mr. Skrzypek because such a response would reveal NSA's

7

organization, functions and activities by revealing whether NSA did or did not assist the FBI in an alleged decryption effort. It would also reveal the methods by which NSA conducts its cryptologic activities. Revelation of this information is prohibited pursuant to Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 402 note. Thus, acknowledging the existence or non-existence of information regarding whether NSA assisted the FBI with an alleged effort to decrypt Mr. Pellicano's computer is prohibited by statute, and is properly exempt from disclosure under FOIA Exemption 3.

16. I declare under of penalty of perjury that the foregoing is true and correct.

Signed this 11th day of September, 2007

*Rhea D Siers*
RHEA D. SIERS
Deputy Associate Director for Policy & Records
National Security Agency