UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

OCT 1 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JAMES R. SKRZYPEK )
 )
            Plaintiff, )
 )
      v. )  Civil Action No. 06 1129
 )  (EGS)
UNITED STATES TREASURY DEPARTMENT, )
et al., )
 )
            Defendants )
 )
 )

### PLAINTIFF'S OPPOSITION TO DEFENDANT NATIONAL SECURITY AGENCY'S RENEWED MOTION FOR SUMMARY JUDGMENT

#### INTRODUCTION

The National Security Agency ("NSA") has renewed its request for summary judgment and raises new arguments, for the first time, on why the motion should be granted. In addition, the NSA now attempts to justify why all documents responsive to Plaintiff's FOIA Request should not be released.

Plaintiff submitted a FOIA Request on June 12, 2006, to the National Security Agency for the following information:

> [a]ny and all documents, records, audiotapes or videotapes, in electronic, digital, analog or in any other format in your possession, custody or control obtained, in any way, including, but not limited to, deciphered encrypted format, from Anthony Pellicano, relating, in any way, whatsoever, with James R. Skrzypek or Federal Security, Inc. (Plaintiff's Amended Complaint, Dkt.6).

1

Plaintiff filed suit after a response was not received within the statutorily prescribed period of time under 5 U.S.C. § 552(6)(A)(i). On October 23, 2006, the NSA filed a Motion to Dismiss in Part or, in the Alternative, for Summary Judgment in Part, relying on the declaration from now former Director of Policy, Louis F. Giles, who touted the "extensive experience and knowledge of a 'cadre' of NSA employees" in the search for responsive records, but said it could find nothing responsive to Plaintiff's FOIA Request. (See Giles Decl, Def.Ex.1 ¶.9).

## NSA'S SEARCH WAS INADEQUATE AND UNREASONABLE

The shortcomings of the Giles Declaration are now apparent in the backdrop of perceived justifications for not releasing any information Plaintiff requested after NSA was denied summary judgment. A Plaintiff in a FOIA claim can avoid summary judgment by making a showing of bad faith sufficient to impugn the agency's affidavits or declarations, or by producing "tangible evidence that... summary judgment is otherwise inappropriate." Carney v. United States Department of Justice, 19 F.3d at 812, (2nd Cir.1994). The adequacy of a search is measured by a standard of reasonableness... Truitt v. Department of State, 897 F.2d 540, 542 (D.C.Cir. 1990). Where the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate. Perry v. Block, 648 F.2d 121,127 (D.C.Cir.1982). Before it can obtain summary judgment in a FOIA case, an agency must show, viewing the facts in the light most favorable to the

reqester, that it has conducted a search "reasonably calculated to unccver all relevant documents." Id. 897 F.2d 542.

Defendant now maintains that not only did they conduct an appropriate search, but blames Plaintiff for not raising an argument regarding the interpretation of his FOIA Request in the administrative processing of his request, and accuses Plaintiff of filing a civil action before he received NSA's response. The time between the original request of June 12, 2006 and NSA's response on July 21, 2006, far exceeded the statutory time period to respond before a civil suit may be commenced. Plaintiff is considered to have exhausted the administrative process when the agency does not respond within the time prescribed under the Act. McCall v. U.S. Marshal's Service, 36 F.Supp.2d 3 (D.C.Cir.1999). Plaintiff could not raise a claim of unreasonableness of NSA's search in the civil complaint because the Giles letter was received after Plaintiff's complaint was filed. McCall, supra.

Contrary to Defendant's assertion, the requested information concerning "deciphered/encrypted information from computers of Mr. Pellicano" were of Plaintiff only. Any reference to the FBI was done in Plaintiff's Response in Opposition to Motion to Dismiss in Part or, in the Alternative, for Summary Judgment in Part, which also showed the inadequacy of NSA's search and the shortcomings of the Giles Declaration in searching for responseive records. Plaintiff's exhibits of various national media and news-paper accounts of the FBI and Pellicano were no secret and were already widely known.

3

## PLAINTIFF'S FIFTH AMENDMENT NECESSITY FOR THE INFORMATION

### BACKGROUND

Plaintiff and his wife are federal prisoners. On July 23, 1997, Plaintiff and his wife Janice were indicted in a multi-count indictment focusing on the operation of their private security company, Federal Security. The lynchpin of the government's case consisted of three audio tapes that were purportedly recorded during the period of September 21, 1994 to October 19, 1994 by an FBI operative in a putative "sting." The conversations suggested knowledge and acquiescence in a scheme to pay bribes to certain government officials to ignore billing irregularities in Federal Security's contract with the Chicago Housing Authority.

Anthony Pellicano is a convicted former Hollywood Private Investigator currently incarcerated and awaiting trial in Los Angeles for wiretapping violations and other related charges. On or about Novemeber 1, 2001, Plaintiff retained the services of Pellicano to authenticate those audio tapes that were to be used at their upcoming criminal trial in Chicago. Plaintiff spoke with Pellicano and his staff over the course of several weeks with Pellicano's representation that he had conversations with the government and the FBI on behalf of Plaintiff.

Shortly after Plaintiff and his wife were convicted, news accounts documented the arrest of Pellicano by the FBI at his Los Angeles office. During the arrest, FBI Agents executed a search warrant and seized computers that contained encrypted conversations. A litany of former employees revealed that Pellicano recorded all

4

of his conversations, both incoming and outgoing. (See Plaintiff's Response in Opposition, Ex. 1,2. Dkt.30). Plaintiff submitted a FOIA Request to the NSA after learning that the NSA was contacted by the FBI to assist in the decryption of Pellicano's computers. (Id. Ex.4,5).

**ARGUMENT**

Defendant NSA raises a series of objections and exemptions that it attempts to retrofit into Plaintiff's request to avoid complying with disclosure. Defendant invokes a Glomar response in not confirming or denying the existence of documents responsive to Plaintiff's request. This action is somewhat protracted because for more than a year, accounts of NSA's involvement with the FBI were flooded in wide ranging newspaper, media and court filings, that have all but reduced this to a known fact.

Defendant NSA reasons that if this information is released to Plaintiff, national security could be jeopardized. They cite exemptions (b)(1), (b)(3) and Section 6 of the National Security Act in their position to withhold the material and blanket Plaintiff's request among a host of reasons for non-disclosure.

The NSA is no stranger to FOIA actions. Most noteworthy in recent successful cases have been lawsuits stemming from the Agency's warrantless wiretapping. In this Court, United States District Judge Henry Kennedy granted a request in February, 2006, by the Electronic Privacy Information Center (EPIC) for a preliminary injunction compelling Justice Department officials to respond to FOIA requests related to the wiretapping program. (Citation

omitted). This was despite the challenge of the classified nature of the NSA. Since then, other Plaintiffs have sued the NSA for constitutional violations such as the ACLU and the Electronic Freedom Foundation.

Plaintiff has no need to learn any secret information about means, sources or methods of the NSA's program that are protected from disclosure. Plaintiff's only interest is in the information surrounding Pellicano's involvement with the government in the fabrication of the audio tapes, of which Plaintiff raises a Fifth Amendment Constitutional necessity.

The FOIA cannot and should not be used as a method of shielding illegal government activity. Terkel v. AT & T Corp, 441 F.Supp. 2d 899 (N.D.Ill.2006). In Terkel, the court expressed concern citing Hayden, v. National Security Agency, 608 F.2d 1381 (D.C. Cir.1979) that:

> [i]n Hayden, however the court reserved deciding whether the NSA could use section 6 to withhold information regarding unauthorized or illegal activities, stating that "where the function or activity is <u>authorized by statute and not otherwise unlawful</u>, NSA materials integrally related to that function or activity fall within [section 6] and Exemption 3 [of FOIA]."…. We are, however, concerned that if, as the court in Hayden anticipated, section 6 is taken to its logical conclusion, it would allow the federal government to conceal information regarding blatantly illegal or unconstitutional activities simply by assigning these activities to the NSA or claiming they implicated information about the NSA's functions. (Emphasis in the original).

Section 1.7 of Executive Order 13292 states, in pertinent part, that "[i]n no case shall information be classified in order to... conceal violations of law." Section 3.1(b) of Executive Order 13292 provides that "[i]n some exceptional cases,... the need to protect [sensitive] information may be outweighed by the public interest in disclosure of the information, and in these cases the information should be declassified" by the agency. (Def.Ex.1).

Plaintiff's constitutional need for the information fits the category of "exceptional cases" and, as such, disclosure should be compelled under FOIA. Inherent public interest in learning about government misconduct and criminal activity are also very high and much of NSA's involvement with the FBI is already part of the public record and thus, the information should be released. NSA's declarations are insufficient to support withholding under the FOIA because there is no reasonable expectation of damage to national security that would reveal anything about sources, methods or procedures, nor expose any function that is not already widely known to the public.

"A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both. Knowledge will forever govern ignorance; And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives." James Madison, Letter to W.T. Barry (August 4, 1822), reprinted in The Complete Madison, 337 (Saul K. Padover ed., 1953). "A government by secrecy benefits no one. It injures the people is seeks to serve; it damages its

own integrity and operation. It breeds distrust, dampens the fervor of its citizens and mocks their loyalty." (Statement of Senator Edward V. Long, 110 Cong. Rec. 17,087, 1964).

## CONCLUSION

For the foregoing reasons, Defendant National Security Agency's Renewed Motion for Summary Judgment should be denied.

Respectfully submitted,

*/s/ James R. Skrzypek*

James R. Skrzypek
P.O. Box 1000
Duluth, MN 55814

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES R. SKRZYPEK )
 )
       Plaintiff, )
 )
   v. ) Civil Action No. 06 1129
 ) (EGS)
UNITED STATES TREASURY DEPARTMENT, )
et al., )
 )
       Defendants )

**NOTICE OF FILING AND PROOF OF SERVICE**

To:  Clerk, United States District Court, District of Columbia,
     333 Constitution Avenue, N.W., Washington, DC 20001-2802

     Madelyn E. Johnson, Assistant United Staes Attorney, 555 4th
     Street, N.W., 10th Floor, Rm E4114, Washington, DC 20535

PLEASE TAKE NOTICE, that on October 12, 2007, the undersigned mailed one original of Plaintiff's Opposition to Defendant National Security Agency's Renewed Motion for Summary Judgment, to the Clerk, United States District Court for the District of Columbia, with postage prepaid and by placing them in the United States Mail on October 12, 2007 in Duluth, Minnesota.

_____
James R. Skrzypek

James R. Skrzypek
P.O. Box 1000
Duluth, MN 55814